SHEDD, Circuit Judge,
concurring in part and dissenting in part:
I concur in Parts I-IV of the majority opinion, affirming the jury’s verdict on liability and compensatory damages. However, I believe the district court erred in excluding Simo’s claim for punitive damages from the jury’s consideration. In addition, I believe it is entirely appropriate to remand this case for a trial solely on punitive damages. Accordingly, I dissent from Parts V and VI of the majority opinion.
Under South Carolina law, “punitive damages may be awarded to punish only those tortfeasors who have acted in a reckless, willful or wanton manner.” Jimenez v. DaimlerChrysler Corp., 269 F.3d 439, 449-50 (4th Cir.2001) (internal punctuation omitted). In meeting this standard, a plaintiff need not show that a tortfeasor had actual knowledge of the danger his tortious behavior posed to another. Rather, a plaintiff can recover punitive damages “even when the wrongdoer does not *303 actually realize that he is invading the rights of another, provided the act is committed in such a manner that a person of ordinary prudence would say that it was a reckless disregard of another’s rights.” Atlas Food Systems & Services, Inc. v. Crane Nat’l Vendors, Inc., 99 F.3d 587, 599 (4th Cir.1996).
Simo produced evidence which indicates that Mitsubishi (1) knew or should have known of the risk that its Montero Sport would roll over because it could not sustain the tire forces which come into play following an emergency swerve and (2) recklessly disregarded those risks.[6] More specifically, as to the risk of an accident and Mitsubishi’s knowledge thereof, Simo’s evidence shows: that drivers of Mitsubishi’s vehicles would, from time to time, have to undertake accident avoidance maneuvers; that such maneuvers could expose the vehicles to “limit tire forces”; that vehicles whose static stability factor is as low as 1.06 are likely to roll over, untripped in such circumstances; that the consequence of a rollover would be severe, inasmuch as rollovers are one of the deadliest accident scenarios; that Mitsubishi conceded it was on notice that its vehicles had been involved in roll overs; and that any reasonable manufacturer would have known of the risk based on the testing, research, and literature available in 2000. As to Mitsubishi’s disregard of these risks, Simo introduced evidence demonstrating: that Mitsubishi did not perform “limits” testing to determine whether the Montero Sport would remain stable in limit tire force conditions; that it knew how to perform such testing (and had done so for other vehicles); that it knew or should have known that only limits testing would allow it to evaluate whether the Montero Sport posed unnecessary risks of untripped rollovers; that it did not alter the design of the Montero Sport; and that it sold the Montero Sport despite these failures.
Mitsubishi, of course, vigorously contested Simo’s allegations and his evidence both in its case-in-chief and on cross-examination. Nonetheless, it was for the jury to determine whether to accept Simo’s evidence and credit his witnesses or to side with Mitsubishi instead. Because Simo’s evidence, if credited, supports a claim for punitive damages, the district court erred in excluding it from the jury’s consideration. See Atlas Food Systems, 99 F.3d at 597 (holding that a district court should not grant judgment as a matter of law “unless there was no evidence presented in the case that would authorize the jury’s verdict”) (emphasis added).
The majority does not consider whether Simo presented a viable claim for punitive damages because it concludes that a trial limited to that issue would be “inappropriate.” In reaching this conclusion, the majority relies on Atl. Coast Line R. Co. v. Bennett, 251 F.2d 934, 938 (4th Cir.1958), in which we applied the established principle that a partial new trial should not be ordered unless the issue to be retried is separate and distinct from the remainder of the case such that “the trial of it alone may be had without injustice” to bar a new trial limited to punitive damages. The Bennett court based its holding on its observation that “the evidence relating to wilful misconduct is inextricably tied up with that relating to primary negligence.” Id. at 939. I do not believe, however, that Bennett established a firm rule that a new trial on punitive damages is inappropriate as a matter of law where a plaintiff relies on overlapping evidence to support his claims for compensatory and punitive damages. In fact, we implicitly rejected this *304 interpretation of Bennett in Atlas Food Systems. There, we concluded that a district court did not abuse its discretion when it ordered a new trial on punitive damages because “[a]ll of the evidence relating to [the defendants’] willful or wanton conduct was before the second jury, enabling it to render a proper verdict on both the liability for and amount of punitive damages.” Atlas Food Systems, 99 F.3d at 599-600. Similarly, in this case, if a new trial on punitive damages were granted, a jury would be able to consider in full the evidence relating to Mitsubishi’s alleged willfulness and recklessness. Therefore, I would reverse the district court’s grant of judgment as a matter of law on Simo’s punitive damages claim and would remand for a new trial on that claim.

. In assessing the district court’s grant of judgment as a matter of law on Simo’s punitive damages claim, we must view the evidence — and I recite it here — in a light most favorable to Simo. Atlas Food Systems, 99 F.3d at 597.